Jon **HEDMAN**, Petitioner,

v.

**DEPARTMENT OF AGRICULTURE**, Respondent.

No. 90-3087.

United States Court of Appeals, Federal Circuit.

Oct. 11, 1990.

Zenas Baer, Hawley, Minn., argued for petitioner.

Catherine A. Christman, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Tamra Phipps, Asst. Director. Also on the brief was John Chott, Office of General Counsel, Agriculture Stabilization and Conservation Service.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Jon Hedman ("Hedman"), formerly employed as the County Executive Director ("CED") of the Clay County, Minnesota Agriculture Stabilization and Conservation Service ("ASCS"), seeks review of the final decision of the Merit Systems Protection Board ("MSPB") dismissing for lack of jurisdiction his appeal of his removal for cause. *Hedman v. Department of Agriculture*, 42 M.S.P.R. 489 (M.S.P.B.1989), *aff'g Hedman v. Department of Agriculture*, Initial Decision (M.S.P.B. June 28, 1989) ("MSPB Decision"). We affirm.

I

Hedman was employed by various ASCS County offices from 1962 through 1984. On or about October 26, 1975, he began employment as the CED in Clay County, Minnesota. He was terminated for cause by the County Committee on September 5, 1984. *See Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988) ("Claims Court Opinion"). He appeals that termination.

The ASCS County offices were established pursuant to the Soil Conservation and Domestic Allotment Act, Pub.L. No. 46, 49 Stat. 163 (1935) (codified as amended at 16 U.S.C. § 590h (1988)). Under § 590h, the Secretary of Agriculture is to develop a program of agricultural land stabilization and conservation. The statute directs the Secretary to form local committees to advise the U.S. Department of Agriculture ("USDA") in this task. Community committee members ("CMC") are elected by participating farmers from selected administrative areas. The CMC, in turn, nominate and elect county committees ("COC") at an annual county convention. *Id.* Under duly promulgated regulations, the Secretary has delegated overall supervision of the program to the ASCS Administrator and to appointed State committee members ("STC"). *See* 7 C.F.R. §§ 2.21(b)(37), 2.65(a)(19), 7.1(a) and (c), 7.4 (1990). The COC is charged with administering the ASCS County office, although the ASCS Administrator has the authority to "revers[e] or modify[ ] any determination made by a State or county committee." 7 C.F.R. § 7.1(d) (1990). The COC is to "[e]mploy the county executive director, subject to the standards and qualifications furnished by the State committee, to serve at the pleasure of the county committee." 7 C.F.R. § 7.21(b)(2) (1990).

The USDA has issued an "ASCS Handbook" for County Office Personnel Management, entitled 22–PM (Revision 1). The 22–PM lists the basic responsibilities of the COC and the CMC members, and the CED. 22–PM ¶ 38. The 22–PM contains instructions on filling CED vacancies. First, the COC must notify the STC of a CED vacancy. *Id.* ¶ 88A. The STC is to "[a]dvertise vacancies within the State" for the CED position. *Id.* ¶¶ 88B, 146. The STC places applicants into certified categories of eligibility based on published criteria and forwards a final list of candidates to the COC. *Id.* ¶ 146.5 The COC must then "[h]ire CED's from the Certificate of Eligible Candidates issued by [the] STC" and "[m]ake the appointment as soon as possible after [the] candidate is selected." *Id.* ¶ 88A(2). The ASCS County offices do not use the standard SF–50 federal appointment form. Rather, an ASCS–282 appointment form is used. The 22–PM provides that the "COC shall approve [the] ASCS–282 affecting [a] CED." *Id.* ¶ 97.

II

Upon removal, Hedman exhausted the administrative remedies found at 7 C.F.R. §§ 7.28, 7.30 (1989) and in the 22–PM. The Acting Deputy Administrator of State and County Operations of the USDA denied the appeal of his dismissal after an administrative hearing. *See* 7 C.F.R. § 7.31 (1989). Hedman filed a complaint in the U.S. District Court for the District of Minnesota asserting claims under the Administrative Procedure Act, the common law, and the Constitution. His complaint was dismissed for lack of subject matter jurisdiction. *Hedman v. United States*, Civ. No. 6–85–760 (D.Minn. Feb. 28, 1986).

Hedman next filed a complaint in the Claims Court alleging breach of implied-in-fact contract, and seeking a remedy under the Back Pay Act, 5 U.S.C. § 5596 (1988), or the Severance Pay Act, 5 U.S.C. § 5595 (1988). The Claims Court dismissed the Back Pay and contract claims by holding that Hedman was a federal "employee" under Title 5. Claims Court Opinion at 314–15. In so doing, the Claims Court declined to follow its opinion in *Hamlet v. United States*, 14 Cl.Ct. 62 (1988), *vacated and remanded*, 873 F.2d 1414 (Fed.Cir. 1989), that held that an ASCS County office employee was *not* a federal employee for purposes of 5 U.S.C. § 2105(a). Claims Court Opinion at 317 n. 30. The Claims Court held that federal employees have no remedy in "implied-in-fact" contract, *id.* at 316, and their exclusive remedy under the Back Pay Act was with the Merit Systems Protection Board. *Id.* at 316–17 (citing *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)). The Claims Court adjudicated the Severance Act claim on the merits. *Hedman v. United States*, 21 Cl.Ct. 385 (1990).

Finally, Hedman sought to appeal his removal to the MSPB. The MSPB held that its "jurisdiction is limited to an appeal of an 'employee' from an action under any law, rule, or regulation." MSPB Decision at 2. The MSPB held that Hedman was not a federal employee for purposes of 5 U.S.C. § 2105(a)(1), and therefore dismissed his appeal for want of jurisdiction. MSPB Decision at 3.

### III

Hedman bears the burden of proving that the MSPB has jurisdiction. *Pavao v. MSPB*, 762 F.2d 988 (Fed.Cir.1985). The sole issue before us is whether Hedman is an employee as defined in 5 U.S.C. § 2105(a)(1) (1988).

Section 2105(a)(1) reads:

For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32.

The government contends that Hedman is not an employee because his appointment by the COC, a body of elected local farmers who are not themselves federal employees, does not satisfy § 2105(a)(1)(D). Hedman concedes that the COC are not federal employees, but asserts that they act pursuant to power delegated by such an "employee."

### IV.

Hedman's contentions are not supported by the applicable federal regulations or by the 22–PM. Although the regulations delegate the Secretary's authority to the ASCS Administrator, the COC at all times retains the CED appointment power. The mere fact that the Administrator may reverse a CED selection does not vest in the Administrator the power to make an appointment, either in the first instance or even after having rejected a choice. The relative duties of the Secretary's agents and the COC are made manifest by the 22–PM which clearly indicates that the role of the USDA employees is to advertise and then "certify" eligible candidates, after which the COC "make[s] the appointment as soon as possible." The COC makes the final appointment act by signing the CED's ASCS Form 282 as specified by the 22–PM. Hedman does not satisfy 5 U.S.C. § 2105(a)(1) because the members of the COC are not employees under § 2105(a)(1)(D) and so Hedman cannot be a federal employee under § 2105.

When Congress has chosen to confer employee status on an ASCS County office

employee, it has done so in express terms. The ASCS employees are included in the Civil Service Retirement System by inclusion of "an individual employed by a county committee established under section 590h(b) of title 16." 5 U.S.C. § 8331(1)(F) (1988).[1] Were Hedman correct in his theory of delegated employment status, there would have been no reason for Congress specifically to have named ASCS employees in other parts of the Title.

The determination of the MSPB that it lacked jurisdiction is

AFFIRMED.

---

[1] There are other provisions that specifically name ASCS County employees. *See also* 5 U.S.C. § 3502(a)(C) (1988) (computation of length of service during a "reduction-in-force" of competitive service positions includes ASCS service time); 5 U.S.C. § 5307(a)(1)(C) (1988) (including ASCS County employees in rates of pay adjustments as a separate category from "employees in the legislative, executive, and judicial branches of the Government of the United States"); 5 U.S.C. § 5595(a)(2)(B) (1988) (Severance Pay Act); 5 U.S.C. § 6312 (1988) (ASCS County service included in determining years of service for annual and sick leave calculations of "employees"); 5 U.S.C. § 8701(a)(8) (1988) (expansion of definition of employee for calculation of life insurance benefits); 5 U.S.C. § 8901(1)(G) (1988) (expansion of definition of employee for health insurance benefits).