# United States Court of Appeals
# for the Federal Circuit

---

**MARK G. ABBEY, L. ROGER ABEL, ETHAN
ABELOV, KURT G. ABERHORN, MARC M.
ABEYTA, GARY LEE ABPLANALP, STEPHEN J.
ABRAHAM, LYNN M. ABRAM, RUSSELL O.
ABSHER, GEORGE G. ACAMPORA, TRACEY E.
ACAMPORA, DIANE L. ACEVES, THOMAS M.
ACHIN, MICHAEL R. ACKERMAN, KRIS ACORD,
ANDREW G. ACRES, JEFFREY S. ADAIR,
LEONARD J. ADAMCZYK, MICHAEL ADAME,
STEVE ADAMEK, AMANDA M. ADAMS, BETH E.
ADAMS, CARL T. ADAMS, CHARLES B. ADAMS,
AND JAMES P. ADAIR,**
*Plaintiffs-Appellees,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---

2013-5009

---

Appeal from the United States Court of Federal Claims in No. 07-CV-0272, Chief Judge Emily C. Hewitt.

---

Decided: March 21, 2014

---

GREGORY K. MCGILLIVARY, Woodley & McGillivary, of Washington, DC, argued for plaintiffs-appellees. With him on the brief was SARA L. FAULMAN.

HILLARY A. STERN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

————————————

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* TARANTO.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* O'MALLEY.

TARANTO, *Circuit Judge.*

The plaintiffs in this case—the "controllers"—are or were employed by the Federal Aviation Administration as air-traffic-control specialists or traffic-management coordinators. The controllers sued the United States in the Court of Federal Claims, alleging that the FAA's policies governing how to compensate them when they worked overtime failed to comply with the time-and-a-half-payment requirement of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207. They sought damages under 29 U.S.C. § 216(b) and invoked the court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491. The Court of Federal Claims ruled in the controllers' favor, holding that the agency's personnel policies are contrary to the FLSA and are not authorized by any other provision of law.

We reject the Court of Federal Claims' essential premise—that no provision authorizes the FAA to depart from the FLSA's overtime-pay provision. We hold that the

FAA has such authority under particular provisions of the federal personnel laws, 5 U.S.C. §§ 5543 and 6120-6133. We therefore vacate the judgment of the Court of Federal Claims and remand the case for further proceedings to determine whether the challenged FAA policies are fully, or only partly, within the authority of those title 5 exemptions from the FLSA.

BACKGROUND

A

The FLSA generally requires that, when a non-exempt employee works more than forty hours per week, the employer must pay the employee for the overtime hours at a rate of one-and-a-half times the employee's regular rate of pay. 29 U.S.C. § 207(a)(1). Unless modified by other statutes, that provision has applied, since 1974, to federal employees like the controllers. *Id.* § 203(e)(2). But title 5 of the United States Code, which governs federal employment specifically, includes several exceptions to the FLSA's overtime-pay requirement. The exceptions relevant to this case concern "compensatory time" and "credit hours" for certain employees.

Section 5543(a)(1) of title 5 provides that, in the case of irregular or occasional overtime, a federal agency may provide "compensatory time" instead of money as compensation if the employee so requests: rather than pay dollars (at a time-and-a-half rate), the agency may provide time off (on a one-to-one basis, *i.e.*, the same number of hours off as the overtime worked). 5 U.S.C. § 5543(a)(1). Sections 6120-6133 of title 5 address employees who work flexible schedules rather than traditional forty-hour workweeks, authorizing two forms of non-cash compensation for such employees. First, the provisions authorize an agency to grant an employee compensatory time off for overtime hours, in lieu of payment, at the request of the employee. *Id.* §§ 6123(a)(1), 6121(6). Second, the provisions authorize the grant of "credit hours," which are "any

hours, within a flexible schedule established under section 6122 of this title, which are in excess of an employee's basic work requirement and which the employee elects to work so as to vary the length of a workweek or a workday." *Id.* § 6121(4). The employee can use credit hours "to reduce the length of the workweek or another workday" without forfeiting pay or using leave. *Id.* § 6122(a)(2). An employee may accumulate up to 24 credit hours in one pay period, *id.* § 6126(a), and if the employee stops working a flexible schedule, the agency must pay for those hours at the employee's current rate of pay, *id.* § 6126(b).

Before 1996, the FAA relied on the exemptions contained in title 5 for the authority to compensate the controllers with compensatory time and credit hours in lieu of FLSA-mandated overtime pay. Then, in late 1995, Congress passed the Department of Transportation and Related Agencies Appropriations Act, 1996 ("Appropriations Act"), which authorized several reforms to the FAA's operations that were to take effect in 1996. Pub. L. No. 104-50, § 347, 109 Stat. 436, 460 (1995), codified as amended at 49 U.S.C. § 40122(g). Two provisions are important here. Section 40122(g)(1) directed the FAA to develop a new personnel policy to provide the agency "greater flexibility" in determining employee compensation and other matters:

> In consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and *notwithstanding the provisions of title 5 and other Federal personnel laws*, the Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce. *Such a new system shall, at a minimum, provide for greater*

*flexibility in the hiring, training, compensation, and location of personnel.*

49 U.S.C. § 40122(g)(1) (emphases added). And Section 40122(g)(2) provides:

*The provisions of title 5 shall not apply to the new personnel management system* developed and implemented pursuant to paragraph (1), with the exception of--

> (A) section 2302(b), relating to whistleblower protection, including the provisions for investigation and enforcement as provided in chapter 12 of title 5;

> (B) sections 3308-3320, relating to veterans' preference;

> (C) chapter 71, relating to labor-management relations;

> (D) section 7204, relating to antidiscrimination;

> (E) chapter 73, relating to suitability, security, and conduct;

> (F) chapter 81, relating to compensation for work injury;

> (G) chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage;

> (H) sections 1204, 1211-1218, 1221, and 7701-7703, relating to the Merit Systems Protection Board; and

> (I) subsections (b), (c), and (d) of section 4507 (relating to Meritorious Executive or Distinguished Executive rank awards) and subsections (b) and (c) of section 4507a (re-

> lating to Meritorious Senior Professional
> or Distinguished Senior Professional rank
> awards). . . .

*Id.* § 40122(g)(2) (emphasis added).

In response to those directives, the FAA developed and implemented a new personnel management system that would take effect April 1, 1996. In so doing, the agency concluded that the language of section 40122(g) permitted it to incorporate into the new system certain provisions of title 5 relating to overtime compensation that it had relied on for modification of FLSA requirements before the Appropriations Act. *See Abbey et al. v. United States (Abbey III)*, 106 Fed. Cl. 254, 260 (2012). The agency concluded: "Although [the Appropriations Act] exempts the new personnel system from substantially all of Title 5, [the] FAA has the discretion to adopt the substance of any portion of Title 5 as deemed appropriate." J.A. 1009.

Soon after the FAA implemented its new system, Congress enacted the Federal Aviation Reauthorization Act of 1996, Pub. L. No. 104-264, §§ 201-30, 110 Stat. 3213, 3232 (Oct. 9, 1996) ("Reauthorization Act"). The Act added the following to 49 U.S.C. § 106(*l*):

> Except as provided in [subsections (a) and (g) of section 40122], the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. *In fixing compensation and benefits of officers and employees*, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), *nor shall the Administrator be bound by any requirement to*

*establish such compensation or benefits at particular levels.*

49 U.S.C. § 106*(l)*(1) (emphases added).

Under its newly adopted personnel management system, the FAA continued to provide compensatory time for certain hours worked beyond its employees' regular work schedules. *Abbey III*, 106 Fed. Cl. at 263. When a manager directed an employee to work overtime, that employee could choose to earn compensatory time in lieu of cash compensation. *Id.* Although FAA policy limited a controller to 160 compensatory hours, in practice the FAA allowed accumulation of more. J.A. 89. Between 1998 and May 2007, compensatory time had no use-or-lose expiration date. *Abbey III*, 106 Fed. Cl. at 263. In May 2007, however, the government's policies changed—compensatory time earned before that date would expire by May 14, 2010, and any new compensatory time had to be used within one year. *Id.*

The FAA also permitted its employees working a flexible work schedule to earn credit hours. *Id.* at 261-62. An employee could elect to work beyond his or her normal workweek in exchange for credit hours, with one credit hour earned for each above-the-normal-week hour worked. *Id.* at 262. The employee could use the credit hours only to take time off at a later date and could not receive cash value for them. *Id.* Between 1998 and September 3, 2006, the agency imposed no cap on the number of credit hours an employee could accrue; after that date, an employee could accrue only 24 credit hours; and if a controller had accrued more than 24 credit hours before September 2006, that employee could retain those credit hours but could not accrue additional credit hours until the balance of unused credit hours fell below 24. *Id.* On October 1, 2009, the FAA discontinued its use of credit hours. *Id.*

B

On May 1, 2007, the controllers filed a four-count complaint in the Court of Federal Claims. The complaint invokes the court's jurisdiction under the Tucker Act based on the claim for money under the damages provision of the FLSA, 29 U.S.C. § 216(b). Count II of the complaint, the only count at issue in this appeal, alleges that the United States violated the FLSA by paying the controllers in the form of compensatory time or credit hours, rather than in money at a time-and-a-half rate, for hours worked in excess of forty hours a week. The United States, agreeing that the court had jurisdiction, moved to dismiss the count for failure to state a claim (a motion then treated as a motion for summary judgment), and the controllers moved for summary judgment of government liability. *See Abbey v. United States (Abbey I)*, 82 Fed. Cl. 722, 728 (2008).

On July 31, 2008, the Court of Federal Claims granted the controllers' motion for summary judgment on count II (and denied the government's motion), holding that the FAA had no authority to depart from the overtime-pay requirement of the FLSA, 29 U.S.C. § 207(a), by providing compensatory time or credit hours to employees, even at their request, in place of time-and-a-half pay. *Id.* at 745. The court concluded that the express statutory exceptions to the FLSA, including 5 U.S.C. §§ 5543 and 6120-6133, did not apply to the controllers. *Id.* at 743. Because sections 5543 and 6120-6133 are not listed "among the exceptions to the express provision of 49 U.S.C. § 40122(g)(2) that '[t]he provisions of title 5 shall not apply to [the FAA's] new personnel management system,'" the court reasoned, the FAA could not rely on those provisions for authority to grant employees compensatory time off at a straight time rate. *Id.* at 731-32. The court read the phrase "shall not apply" to mean that no title 5 provisions were available to the FAA—neither provisions that constrained the FAA nor provisions that empowered

the FAA—other than those specifically enumerated in 49 U.S.C. § 40122(g)(2). *Id.* at 731-32.

The court also rejected the government's argument that, even apart from sections 5543(a)(1) and 6123(a)(1) of title 5, the agency was given authority to act contrary to the FLSA overtime-pay requirement by 49 U.S.C. §§ 40122(g)(1) and 106(*l*). *Abbey I*, 82 Fed. Cl. at 733. As described above, section 40122(g)(1) authorized the FAA to create a personnel management system that "provide[d] for greater flexibility" in the compensation of personnel, and section 160(*l*) authorized the FAA to set compensation and benefit guidelines for FAA employees without being "bound by any requirement to establish such compensation or benefits at particular levels." The Court of Federal Claims determined that those provisions did not authorize departure from the command of FLSA if, as the court had concluded, no other provision countermanded that command. *Id.* at 734-38. Finally, the court concluded that 29 U.S.C. § 204(f), which authorizes the Office of Personnel Management to administer the FLSA for federal employees, does not authorize the government to override the applicability of otherwise-applicable FLSA provisions like the overtime-pay requirement. *Id.* at 739-42.

Having concluded that the FLSA's overtime-pay command applied to the FAA, the court held that the FAA's practice of using compensatory time and credit hours was unlawful. *Id.* at 745. The court subsequently reached a final judgment on the controllers' claim to damages. *Abbey et al. v. United States*, No. 1:07-cv-272-ECH (Fed. Cl. Sept. 7, 2012), ECF 287. The government appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### A

The threshold question is whether the Court of Federal Claims had jurisdiction over the controllers' claims. The Tucker Act grants the court jurisdiction over a non-tort monetary claim "against the United States founded . . . upon . . . any Act of Congress." 28 U.S.C. § 1491(a)(1).[1] As the courts have held at the government's urging for three decades, since soon after the FLSA was extended to the federal government by the Fair Labor Standards Amendments Act of 1974, Pub. L. No. 93-259, § 6(a), 88 Stat. 55, 58 (1974), the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA, 29 U.S.C. § 216(b). *See Graham v. Henegar*, 640 F.2d 732, 734 (5th Cir. 1981) (noting that "[t]he Government . . . argues that . . . the Tucker Act is the sole basis of jurisdiction" over FLSA actions against the government for damages under 29 U.S.C. § 216(b), the court agrees and orders transfer to Court of Claims of claim for more than $10,000); *Beebe v. United States*, 640 F.2d 1283, 1288-89 (Ct. Cl. 1981); *see also Waters v. Rumsfeld*, 320 F.3d 265, 270-72 (D.C. Cir. 2003); *El-Sheikh v. United States*, 177 F.3d 1321, 1324 (Fed. Cir. 1999); *Saraco v. United States*, 61 F.3d 863, 866 (Fed. Cir. 1995); *Parker v. King*, 935 F.2d 1174, 1177-78 (11th Cir. 1991); *Zumerling v. Devine*, 769 F.2d 745, 748-49 (Fed. Cir. 1985).[2] Under this straight-

---

[1]    If the claim is for no more than $10,000, district courts have concurrent jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Regardless of the amount claimed, appellate jurisdiction lies in this court for a claim under a non-tax statute like the FLSA. *Id.* § 1295(a)(2) & (3).

[2]    In addition, see, *e.g.*, *Adams v. United States*, 471 F.3d 1321 (Fed. Cir. 2006); *Adams v. United States*, 391

forward logic and 30-year-old, multi-circuit, apparently unbroken precedent, the Court of Federal Claims had jurisdiction here.

Before filing this appeal, the government agreed that the Court of Federal Claims had jurisdiction over this case under the Tucker Act. It now argues, however, that the Supreme Court's decision in *United States v. Bormes*, 133 S. Ct. 12 (2012), makes so great a change in analyzing Tucker Act jurisdiction that it requires overturning the longstanding, government-supported interpretation that the Tucker Act applies to FLSA damages cases against the United States, even though *Bormes* did not involve the FLSA. We disagree.

The Supreme Court in *Bormes* confirmed that Tucker Act jurisdiction can be "displaced" by other statutes that themselves lay out remedial schemes that are sufficiently complete to imply that they "supersede[]" the Tucker Act as a basis for suing the United States. 133 S. Ct. at 18. The Court relied on various precedents that bar "an additional remedy in the Court of Claims . . . when it contradicts the limits of a precise remedial scheme." *Id.* The Court found the Fair Credit Reporting Act to be such a scheme, because, among other things, it gives

---

F.3d 1212 (Fed. Cir. 2004); *Berg v. Newman*, 982 F.2d 500 (Fed. Cir. 1992); *Abreu v. United States*, 948 F.2d 1229 (Fed. Cir. 1991); *Doyle v. United States*, 931 F.2d 1546 (Fed. Cir. 1991); *Cook v. United States*, 855 F.2d 848 (Fed. Cir. 1988); *Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987); *Slugocki v. United States*, 816 F.2d 1572 (Fed. Cir. 1987); *United States v. Cook*, 795 F.2d 987 (Fed. Cir. 1986); *Qualls v. United States*, 678 F.2d 190 (Ct. Cl. 1982). *See also, e.g., Moore v. Donley*, No. Civ-12-1003-HE, 2013 WL 3940898 (W.D. Okla. July 30, 2013) (granting government motion to transfer FLSA suit to Court of Federal Claims).

jurisdiction to identified courts—including "any appropriate United States district court," 15 U.S.C. § 1681p—and hence "'precisely define[s] the appropriate forum.'" *Id.* at 19 (quoting *Hinck v. United States*, 550 U.S. 501, 507 (2007)). Thus, the Fair Credit Reporting Act itself "enables claimants to pursue in court the monetary relief contemplated by the statute" without any resort to the Tucker Act, *id.*—indeed, in a forum (district court) not available under the Tucker Act for claims over $10,000. In that context, "any attempt to append a Tucker Act remedy to the statute's existing remedial scheme interferes with its intended scope of liability." *Id.* at 20.

That ruling and its rationale do not extend to this FLSA suit. In sharp contrast to the statute at issue in *Bormes*, the FLSA contains no congressional specification of a non-Tucker Act forum for damages suits, or any other basis, from which one can infer that application of the Tucker Act would override choices about suing the government embodied in the remedial scheme of the statute providing the basis for liability. That statute-specific conclusion takes this FLSA case outside the reach of the *Bormes* principle.

In 1974, Congress unmistakably provided for judicial imposition of monetary liability on the United States for FLSA violations. (In *Bormes*, in contrast, the government contested, and the Court left open, whether the Fair Credit Reporting Act subjected the United States to damages suits for its violation. 133 S. Ct. at 20.) The 1974 Congress expanded FLSA coverage to "any individual employed by the Government of the United States." 29 U.S.C. § 203(e)(2)(A); *see also id.* § 203(d) ("Employer"). It provided that "[a]ny employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected." *Id.* § 216(b). And it added:

> An action to recover the liability prescribed in ei-
> ther of the preceding sentences may be main-
> tained against any employer (including a public
> agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and
> in behalf of himself or themselves and other em-
> ployees similarly situated.

*Id.*

The crucial language—"any Federal or State court of competent jurisdiction"—does not specify a forum that is contrary to that specified by the Tucker Act. In this respect, it differs critically from the Fair Credit Reporting Act. Indeed, given that, in the FLSA, Congress plainly meant to subject the United States to damages suits for violations (a disputed point for the statute at issue in *Bormes*), the fairest reading of section 216(b) is that it affirmatively invokes the forum specification for those damages suits found outside the four corners of the FLSA. The Tucker Act is the only available specification that has been identified. Thus, not only does the FLSA embody no choices about remedy that might be impaired by Tucker Act coverage; it is best read as affirmatively, if implicitly, invoking such coverage.

In its oral argument to the Supreme Court in *Bormes*, the government noted the possible distinction of the FLSA from the Fair Credit Reporting Act by quoting 29 U.S.C. § 216(b) and observing that "it's possible to read that statute as essentially incorporating the Tucker Act as setting forth what the court of competent jurisdiction would be." Tr. of Oral Argument, *United States v. Bormes*, 133 S. Ct. 12 (2012) (No. 11-192), 2012 WL 4506576, at *9. We think that this is the best reading. With section 216(b) so plainly having authorized damages suits against the United States, it is natural to read the provision as implicitly specifying a forum (the Tucker Act forum) in order to complete the waiver of sovereign im-

munity, given the background principle that waivers of sovereign immunity are generally tied to particular courts. *See United States v. Shaw*, 309 U.S. 495, 501 (1940); *Minnesota v. United States*, 305 U.S. 382, 388 (1939); *McElrath v. United States*, 102 U.S. 426, 440 (1880); *U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013).

We long ago adopted this reading. We explained that the jurisdictional language of the FLSA "require[s] one to look elsewhere to find out what court, if any, has jurisdiction." *Zumerling*, 769 F.2d at 749. The United States reiterated the point in its brief in the *Saraco* case in 1994:

> In a suit against the *Federal Government* pursuant to section 216(b), however, there is no reason to construe the term "court of competent jurisdiction" as extending to courts lacking Tucker Act jurisdiction. Where the Federal Government is sued for damages or back pay, the court of competent jurisdiction can only be one exercising Tucker Act jurisdiction, *i.e.*, the [Court of Federal Claims], or, for claims less than $10,000, a district court.

Brief for Defendants-Appellees, *Saraco v. United States*, 61 F.3d 1321 (1995) (No. 94-3388), 1994 WL 16181941, at *8. The government added that "the FLSA cannot be viewed as a waiver of sovereign immunity independent of the Tucker Act" and endorsed the trial court's conclusion that "'[t]he waiver of sovereign immunity applicable to [FLSA] claims is found in the Tucker Act.'" *Id.*

The inquiry into displacement, or supersession, does not incorporate a rigid rule that, for a statute to displace the Tucker Act, the statute must itself create an alternative remedy and identify a forum. For example, the Supreme Court in *Nichols v. United States* held that Congress, without itself designating a forum, clearly specified that the remedy for challenged collections of customs duties was not a suit against the United States

but suits against individual customs officers (which require no waiver of sovereign immunity, such waivers generally being court-specific). 7 Wall. (74 U.S.) 122, 131, 130 (1868); *see Cary v. Curtis*, 44 U.S. 236, 240 (1845); *Remedies Against the United States and Its Officials*, 70 HARV. L. REV. 827, 838-40 (1957). The crucial point for present purposes is that there is no basis, in any forum specification or otherwise, for finding that Congress in the FLSA made a remedial choice that explicitly or implicitly displaces Tucker Act suits—which, rather, the FLSA is best read as affirmatively approving.

This conclusion is not only what we think is the best view of the FLSA when examined through the lens of *Bormes*. It is also supported by a consistent body of precedent from this court and others, apparently not meaningfully challenged or criticized over a 30-year span beginning soon after Congress extended the FLSA to authorize money suits against the United States for its violation. With the statutory analysis readily allowing the interpretation, this body of statutory precedent, though from outside the Supreme Court, is entitled to substantial weight. *See, e.g.*, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975).

The weight of this particular body of precedent is especially great because of the regular, uncontested practice under it. For decades, a significant number of judgments have been rendered against the United States under section 216(b), year in and year out, and the Department of the Treasury has recorded them annually with—at least for the last decade, perhaps longer—the forum identified as the "CT OF CLAIMS."[3] Moreover, since

---

[3] That is the identification in the payment reports from 2003 to 2013, which are available, in Excel spreadsheet form, on the website of the Department of Treasury. *See, e.g.*, All Payments Fiscal Year 2003, All Payments

1981, Congress has acted a number of times to amend both the FLSA and statutes that modify the FLSA specifically for federal employees.[4]  FLSA duties imposed on the United States, enforced under the Tucker Act for more than three decades, are part of a legal field regularly tended by Congress.

---

Fiscal Year 2008, and the 2013 Judgment Fund Transparency Report to Congress, Financial Management Service, United States Dep't of the Treasury, *available at* https://jfund.fms.treas.gov/jfradSearchWeb/JFPymtSearch Action.do, https://www.fms.treas.gov/judgefund/congress-reports.html.

[4]   As to the FLSA, *see* Pub. L. No. 101-157, 103 Stat. 938 (1989); Pub. L. No. 101-508, 104 Stat. 1388 (1990); Pub. L. No. 104-174, 110 Stat. 1553 (1996); Pub. L. No. 110-233, 122 Stat. 881 (2008).  For amendments of overtime and compensatory-time provisions specific to federal employees, 5 U.S.C. §§ 5542 & 5543, *see* Pub. L. No. 101-509, 104 Stat. 1389, 1427 (1990); Pub. L. No. 102-378, 106 Stat. 1346, 1352 (1992); Pub. L. No. 103-329, 108 Stat. 2382, 2427 (1994); Pub. L. No. 104-201, 110 Stat. 2422, 2738 (1996); Pub. L. No. 105-277, 112 Stat. 2681-102, -519, -829 (1998); Pub. L. No. 106-558, 114 Stat. 2776 (2000); Pub. L. No. 108-136, 117 Stat. 1392, 1636 (2003); Pub. L. No. 109-163, 119 Stat. 3319 (2006); Pub. L. No. 111-383, 124 Stat. 4137, 4383 (2011).  For amendments to provisions concerning overtime and flexible schedules specific to federal employees, 5 U.S.C. §§ 6120-6133, see Pub. L. No. 97-221, 96 Stat. 227 (1982); Pub. L. No. 101-163, 103 Stat. 1041, 1065 (1989); Pub. L. No. 102-40, 105 Stat. 187, 240 (1991); Pub. L. No. 102-378, 106 Stat. 1346, 1352 (1992); Pub. L. No. 103-329, 108 Stat. 2382, 2423 (1994); Pub. L. No. 104-106, 110 Stat. 186, 433 (1996); Pub. L. No. 111-68, 123 Stat. 2023, 2034 (2009).

For these reasons, like the Court of Federal Claims, *see, e.g.*, *Barry v. United States*, 113 Fed. Cl. 774 (2013), we conclude that the Supreme Court's decision in *Bormes* does not call for a different result from the one that our precedent prescribes for this case. *See Conforto v. MSPB*, 713 F.3d 1111 (Fed. Cir. 2013) (analyzing new Supreme Court decision to identify whether it called for departure from our precedent on an issue not squarely decided by the new decision); *Doe v. United States*, 372 F.3d 1347, 1354-56 (Fed. Cir. 2004); *Texas Am. Oil Corp. v. U.S. Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc).

B

On the merits, the question before us is whether the FAA had authority to implement a personnel management system that conflicts with the FLSA. We approach the question in two steps. We ask first whether such authority exists apart from any continuing authority under 5 U.S.C. §§ 5543 and 6120-6133. Concluding that it does not, we next ask whether those particular title 5 provisions provide such authority.

1

We agree with the Court of Federal Claims that unless 5 U.S.C. §§ 5543 and 6120-6133 continue to authorize a departure from the money-payment overtime command of the FLSA, the FAA cannot act contrary to that command. As the government agrees, the controllers are employees who are protected by the FLSA. In order for the FAA's policy of compensatory time and credit hours to be lawful, some other statutory provision must exempt the FAA from complying with 29 U.S.C. § 207(a). We conclude that the government has identified no such provision if 5 U.S.C. §§ 5543 and 6120-6133 are unavailable to the FAA as exemption authority.

The government has invoked two statutory provisions apart from 5 U.S.C. §§ 5543 and 6120-6133.  One is in the FLSA itself, 29 U.S.C. § 204(f), which provides for OPM implementation for federal employees.  The other is 49 U.S.C. § 40122(g)(1)'s authorization to the FAA to create a personnel management system that provides "greater flexibility in . . . compensation."  Neither of those provisions, standing alone (*i.e.*, putting aside 5 U.S.C. §§ 5543 and 6120-6133), can override the FLSA's requirement that employees who work overtime must be compensated with money at a rate of at least one and a half times their regular rate of pay.

Section 204(f) plainly contains no authorization for any departure from the FLSA's command regarding overtime pay.  It simply designates OPM as the agency responsible for implementing the FLSA as it applies to federal employees.  It says nothing that allows OPM to override the FLSA's substantive constraints.  In the absence of any text providing otherwise, OPM's implementation authority must be exercised within the clear constraints set by the statute it administers.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984).

We also conclude that 49 U.S.C. § 40122(g)(1) does not itself authorize override of the straightforward, specific command of 29 U.S.C. § 207(a).  Section 40122(g)(1) does not meet the high standards for what would amount to an implied repeal.  *See, e.g., Hui v. Castaneda*, 559 U.S. 799, 809-10 (2010); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 381 (1996); *Morton v. Mancari*, 417 U.S. 535, 550 (1974); *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936); *Wood v. United States*, 41 U.S. 342, 363 (1842).  That conclusion is reinforced by the principle that "'the specific governs the general.'"  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. ___, ___, 132 S. Ct. 2065, 2071 (2012).

Section 40122(g)(1) is not in irreconcilable conflict with the FLSA's overtime requirement. To the contrary, if it were unambiguously clear that Congress meant in section 40122(g)(2) to eliminate the FLSA-modifying authority provided in 5 U.S.C. §§ 5543 and 6120-6133, the general policy directive to the FAA to create a personnel plan with "greater flexibility," taken by itself, would not be specific and clear enough to countermand both that elimination and the clear command of the FLSA. It would have to be understood to prescribe flexibility only within otherwise-applicable clear statutory constraints, *i.e.*, only with respect to employment matters (*e.g.*, regular pay, leave, retirement, benefits) that are not the subject of a specific command like that of 29 U.S.C. § 207(b). And the legislative history could not compel a different conclusion. Indeed, that legislative history does not address what effect section 40122(g)(1) was meant to have *apart from* the continuing availability of 5 U.S.C. §§ 5543 and 6120-6133 as authority for the FAA.

2

We conclude, however, that 5 U.S.C. §§ 5543 and 6120-6133 did survive the Appropriations Act to provide continued authorization for the FAA's departure from the FLSA. Section 40122(g)(1) plays an important role in that conclusion, which demands considerably less of the provision than a strict implied-repeal analysis.

We readily recognize that it is possible to draw the opposite conclusion from the language of 49 U.S.C. § 40122(g)(2) read in isolation: that provision says that "[t]he provisions of title 5 shall not apply to the new personnel management system . . . with the exception of" certain title 5 provisions that do not include 5 U.S.C. §§ 5543 and 6120-6133. In reaching the opposite conclusion, we rely on the need to read the provision, not in isolation, but in the context of the statutes of which it was and is a part. *See, e.g., Graham Cnty. Soil & Water*

*Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010); *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). We think that it is permissible to read the declaration that "[t]he provisions of title 5 shall not apply to the new personnel management system" to mean only that title 5 provisions shall not *constrain* the new system—thus not eliminating title 5 provisions, like sections 5543 and 6120-6133, that *empower* the FAA in defining the new system. In context, we think, this is the better reading of section 40122(g)(2). In any event, it is a reading available to the FAA under the discretion it has under *Chevron* to adopt reasonable interpretations when the statute does not unambiguously prescribe the result.

The crucial contextual support comes from two provisions. In the Appropriations Act that added 40122(g)(2), in the immediately preceding paragraph, Congress expressly directed the FAA, "notwithstanding the provisions of title 5 and other Federal personnel laws," to develop a personnel management system that, "at a minimum, provide[s] for *greater flexibility* in the hiring, training, compensation, and location of personnel." 49 U.S.C. § 40122(g)(1) (emphasis added). Shortly after giving the FAA this mandate, Congress enacted the Reauthorization Act authorizing the FAA administrator to fix employee compensation. *Id.* § 106(*l*)(1). Congress directed that the administrator would not "*be bound by any requirement* to establish such compensation or benefits at particular levels," except as provided in section 40122(a) and (g). *Id.* § 106(*l*)(1) (emphasis added).

The FAA undisputedly had the authority to use compensatory time and credit hours in lieu of FLSA-mandated overtime pay before the Appropriations Act was passed. The section 40122(g)(1) directive that the FAA provide "greater flexibility" must refer, for the assessment of what is "greater," to a comparison with the

pre-enactment state of authority. Reading section 40122(g)(2) to eliminate the pre-enactment authority would significantly reduce agency flexibility and so is in great tension with the "greater flexibility" directive. *See Whalen v. United States*, 93 Fed. Cl. 579, 594 (2010). That directive therefore supports the conclusion that what "shall not apply" in title 5 is what constrains the employer, not what authorizes the employer to depart from other constraints. Moreover, the "notwithstanding the provisions of title 5" language of section 40122(g)(1), coupled to the greater-flexibility directive, accords with that interpretation. And the language of section § 106(*l*)(1) strongly reinforces the interpretation in stating that the FAA is not to "be *bound by any requirement*" to set compensation or benefits at particular levels. 49 U.S.C. § 106(*l*)(1) (emphasis added). It is reasonable to understand the section 40122(g)(2) language likewise to be limited to relieving the FAA of requirements.

The legislative histories of the Appropriations Act and Reauthorization Act provide support for this reading of section 40122(g)(2). Through the Appropriations Act, Congress sought to reform the operations of the FAA in order to "exempt[ ] the [FAA] from current procurement and personnel laws *that hinder its flexibility*." H.R. Rep. No. 104–475, pt.1, at 31 (1996) (emphasis added). Certain members of Congress expressed concern about waiving the provisions of title 5 that provide employees certain safeguards, *see* 141 Cong. Rec. 29,362 (1995) (statement of Rep. Coleman); *id.* at 29,363 (statement of Rep. Obey); 141 Cong. Rec. 22,896 (1995) (statement of Sen. Glenn), but the language of concern remained in the final bill, which became law with an enumeration of only certain employee-protection provisions of title 5 that were to be mandatory. 49 U.S.C. § 40122(g)(2). The Reauthorization Act that soon followed was intended to "provide for a comprehensive overhaul of the entire FAA by giving the FAA much more autonomy." S. Rep. No. 104-251, at 11

(1996). Thus, it was designed to provide the FAA with the "authority to develop new, innovative personnel and procurement systems, and [the ability] to waive many federal laws and regulations in the areas of personnel and procurement that inhibit the effectiveness of FAA." *Id.* The contemplation of flexibility greater than before enactment supports the interpretation of section 40122(g)(2)'s "shall not apply" language to make that greater flexibility possible.

This interpretation of section 40122(g) is consistent with our decisions in *Brodowy v. United States*, 482 F.3d 1370 (Fed. Cir. 2007), and *Gonzalez v. Dep't of Trans.*, 551 F.3d 1373 (Fed. Cir. 2009), neither of which addressed the issue presented here. *Brodowy* involved a claim under 5 U.S.C. § 5334(b), which—despite not being listed as an exception to the general "shall not apply" language of section 40122(g)(2)—the FAA incorporated into its personnel plan. 482 F.3d at 1375. In *Gonzalez*, we considered whether a controller could be awarded back pay under the Back Pay Act, 5 U.S.C. § 5596, another provision of title 5 not enumerated in section 40122(g)(2)—but this one not incorporated by the FAA into its personnel management system. The court held that the controller could not seek back pay under title 5, but instead had to "comply with the agency's own personnel management system which provides four different procedural avenues for that kind of claim." *Gonzalez*, 551 F.3d at 1376. The decision thus involved a title 5 provision that would constrain the FAA if it applied, not a title 5 provision that empowers the FAA. It is thus fully consistent with the interpretation of section 40122(g) we approve here.

In short, it is reasonable to read section 40122(g)(2) as leaving in place the provisions of 5 U.S.C. §§ 5543 and 6120-6133 that authorize the FAA to depart from the otherwise-applicable commands of 29 U.S.C. § 207. And, we conclude, those are the only provisions the FAA has identified that provide such authority.

## C

Given that conclusion, the validity of the challenged FAA policies on compensatory time and credit hours in lieu of FLSA overtime pay turns on whether those policies are within the authorization of 5 U.S.C. §§ 5543 and 6120-6133. The Court of Federal Claims did not resolve that issue, and the discussion at oral argument in this court confirms that the issue warrants further exploration. *See, e.g.*, Oral Argument at 26:49-28:36, 29:15-30:25, 35:55-38:30, 40:01-42:21. We remand for that purpose. If the government on remand newly points to provisions it has not previously identified as supplying authority for the departures from the FLSA, the Court of Federal Claims should consider whether the government has adequately preserved its ability to so argue.

Accordingly we vacate the decision of the Court of Federal Claims, vacate the accompanying damages award, and remand the case for further proceedings consistent with this opinion.

No costs.

**VACATED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**MARK G. ABBEY, L. ROGER ABEL, ETHAN
ABELOV, KURT G. ABERHORN, MARC M.
ABEYTA, GARY LEE ABPLANALP, STEPHEN J.
ABRAHAM, LYNN M. ABRAM, RUSSELL O.
ABSHER, GEORGE G. ACAMPORA, TRACEY E.
ACAMPORA, DIANE L. ACEVES, THOMAS M.
ACHIN, MICHAEL R. ACKERMAN, KRIS ACORD,
ANDREW G. ACRES, JEFFREY S. ADAIR,
LEONARD J. ADAMCZYK, MICHAEL ADAME,
STEVE ADAMEK, AMANDA M. ADAMS, BETH E.
ADAMS, CARL T. ADAMS, CHARLES B. ADAMS,
AND JAMES P. ADAIR,**
*Plaintiffs-Appellees,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---

2013-5009

---

Appeal from the United States Court of Federal
Claims in No. 07-CV-0272, Chief Judge Emily C. Hewitt.

---

O'MALLEY, *Circuit Judge*, concurring in part, dissenting
in part.

I agree with most of the thoughtful analysis in the
majority opinion. I cannot, however, agree with the

ultimate conclusion that the Federal Aviation Administration ("FAA") is exempt from the overtime obligations imposed on employers under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207(a). Specifically, I agree that: (1) the Court of Federal Claims had jurisdiction over the controllers' claims under the Tucker Act, 28 U.S.C. § 1491(a)(1); (2) the FAA is an employer within the meaning of the FLSA and is generally bound by its provisions; (3) the government has failed to identify an express statutory provision that exempts the FAA from compliance with the overtime requirements under the FLSA; and (4) the Department of Transportation and Related Agencies Appropriations Act, 1996 ("Appropriations Act") does not prohibit the FAA from adopting personnel policies that mirror those in Title 5 of the United States Code and from implementing those policies in ways contemplated by Title 5's implementing regulations, even when the specific Title 5 policy is not expressly enumerated in the Appropriations Act. I do not agree, however, that the FAA is free to adopt a personnel policy from an unenumerated section of Title 5 when doing so would violate an otherwise applicable provision of governing federal law. In other words, the flexibility granted to the FAA under the Appropriations Act is not unlimited by other governing provisions of law. And it does not give the FAA's optional personnel policy choices the force of a Congressional enactment sufficient to overcome any such legal limitations.

For these reasons, I respectfully dissent from the judgment the majority enters. I would affirm the Claims Court's judgment in favor of the controllers and find that: (1) the express statutory exemption from the overtime obligations of the FLSA in 5 U.S.C §§ 5543 and 6120–6133 no longer applies to the FAA and (2) the FAA must comply with the FLSA overtime compensation provisions of the FLSA.

As the majority notes, the FLSA requires employers to provide compensation to employees who work "for a workweek longer than forty hours . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). Congress has extended application of the FLSA overtime provision to federal employees, *see* Pub. L. No. 93–259, 88 Stat. 55 (1974) (codified at 29 U.S.C. § 203(e)(2)), and there is no dispute that the FLSA generally applies to the controllers here. *See* Majority at 17. The majority finds, however, that the FAA has the authority to exempt itself from the overtime provisions of the FLSA for that class of federal employees within its employ. I do not agree.

When Congress has intended to exempt certain employers or employees from the FLSA overtime provisions, it has created express and unambiguous exceptions to the requirement. The FLSA itself, for example, provides an express statutory exception to the overtime provision and provides for the granting of compensatory time in lieu of one and one-half times compensation for certain non-federal government employees. *See* 29 U.S.C. § 207(o) (excepting employees of a state, local, and interstate agency). Likewise, 5 U.S.C. § 5543 contains an express exception to the FLSA's overtime requirement for employees of federal agencies. *See* 5 U.S.C. § 5543(a). Under that provision, an agency head may generally grant an employee compensatory time off from scheduled work or duty in lieu of monetary compensation. *See id.* Sections 6120–6133 of Title 5 also provide exceptions to the FLSA requirement regarding overtime compensation for other specified classes of federal employees. *See* Majority at 3–4. Outside of these express exceptions to the FLSA overtime provision, that provision mandates monetary overtime compensation for federal employees generally.

Under the provisions of the Appropriations Act, Congress granted the FAA the authority to develop a personnel management system ("PMS") to provide an overhaul

of the FAA and allow it to develop new personnel and procurement systems. *See* Appropriations Act, Pub. L. No. 104–50, §§ 347, 109 Stat. 436 (1995) (codified as amended at 49 U.S.C. § 40122(g) (2000)); *see also* S. Rep. No. 104–251, at 11 (1996)). Part of that authority included granting the FAA the ability to avoid many federal personnel laws and regulations that Congress felt might inhibit the effectiveness of the FAA. *See id.* In granting the FAA that authority, Congress sketched certain boundaries within which the PMS was to operate. One express provision stated that the PMS was exempted from Title 5, save a few enumerated exceptions. *See id.* § 40122(g)(2).

Section 40122(g)(2) of Title 49 states that "[t]he provisions of Title 5 *shall not apply* to the" PMS. That section carved out only a few exceptions to this general exemption from Title 5, but the Title 5 overtime exemption for federal employees was not on that list. *See id.* Accordingly, a plain reading of § 40122(g)(2) demonstrates that Congress intended for the FAA to be free from the strictures of Title 5, save in those areas specifically enumerated. There is no ambiguity in the language; § 40122(g)(2) does not list the Title 5 exemption from the FLSA overtime requirement for federal employees as a surviving section. The only route by which the controllers could have received compensatory time instead of cash, i.e., the Title 5 exemption, was closed. Congress did not otherwise create an exception to the FLSA overtime requirement for FAA employees. And, as the majority notes, absent some statutory provision exempting the FAA from complying with the FLSA overtime requirement, the FAA's compensatory time and credit hours policy is unlawful. *See* Majority at 17.

Despite this uncontroversial view of the actual language of § 40122(g)(2), the majority finds that the Title 5 exemptions to the FLSA overtime requirements impliedly survived creation of the PMS. Majority at 19–20. Yet, as

explained above, when Congress has intended to exempt employers from the obligation of the FLSA overtime requirement, it has explicitly said so. When Congress plainly says what it means in a statute, such as stating that Title 5 does not apply to the PMS, we are obliged to give full effect to that intent. *See Dodd v. United States*, 545 U.S. 353, 357 (2005) ("[The] legislature says in a statute what it means and means in a statute what it says there.") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). We may not create additional exceptions contrary to Congress's will. *See United States v. Smith*, 499 U.S. 160, 167 (1991) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent.") (quoting *Andrus v. Glover Construction Co.*, 446 U.S. 608, 616–17 (1980)).

Had Congress intended to exclude the FAA from the FLSA overtime requirements, it easily could have included the relevant Title 5 exceptions in the list of enumerated Title 5 provisions that survived the creation of the PMS. *See* 49 U.S.C. § 40122(g). It did not.

Congress's decision to remove the PMS from the strictures of Title 5—and the overtime exemption—was deliberate. In 1996, Congress passed the Federal Aviation Reauthorization Act of 1996, Pub. L. No. 104-264, §§ 201-30, 110 Stat. 3213, 3232 (Oct. 9, 1996) ("Reauthorization Act"). The Reauthorization Act authorized the FAA to set compensation guidelines for FAA employees. *See id.* § 225 (codified at 49 U.S.C. § 106(*l*)(1)). The legislative history of the Reauthorization Act bears out Congress's decision to remove the PMS from the FLSA overtime exemption.

Early reports relating to the Reauthorization Act from the House and Senate demonstrate that Congress was concerned that, if given free rein to create personnel policies of its choosing, the FAA might ignore certain

provisions of Title 5 that Congress deemed important. *See* S. Rep. No. 104–251, at 59 (1996); H.R. Rep. No. 104–475, at 4 (1996). In its earliest iterations, the bill contained language for a proposed section 49 U.S.C. § 40122(f) that emphasized those provisions of Title 5 with which Congress was concerned, such as the whistleblower and antidiscrimination provisions of Title 5, and said that the FAA must comply with those provisions. The other provisions of Title 5 were simply not mentioned. Later, Congress chose to remove that mandatory language and, instead, chose to exempt the FAA from Title 5 completely, but for a few enumerated sections that, again, reflected the specific provisions with which Congress was most concerned. The overtime provisions of Title 5 were never mentioned, either affirmatively—as in the early drafts—or as enumerated exceptions—reflected in the final draft. Thus, it is clear that Congress considered the individual sections of Title 5 and made a conscious choice about which provisions would and would not apply to the FAA.

The majority relies on two points to support its conclusion that, although not referenced in the Appropriations Act, 5 U.S.C. §§ 5543 and 6120–6133 continue to authorize a departure from the FLSA overtime requirement. Majority at 17. The majority first looks to 49 U.S.C § 40122(g)(1), which states that the PMS was to provide "greater flexibility in the hiring, training, compensation, and location of [FAA] personnel." 49 U.S.C. § 40122(g)(1). But, that language is not sufficient to revive the overtime exemption of Title 5 and give it the force of law. Whatever the flexibility language in § 40122(g)(1) means, it cannot mean that Congress intended to take away most express legal requirements of Title 5 in one breath and restore those same requirements in another. While the majority recognizes that § 40122(g)(1) must be read in the context of the statutes of which it is part (Majority at 19), it sweeps away the

language directly after it in § 40122(g)(2). As explained above, § 40122(g)(2) expressly states which provisions of Title 5 survive the creation of the PMS, and the overtime exemption is not one of them.

The majority next looks to a provision of 49 U.S.C. § 106(*l*)(1), added by the Reauthorization Act, which authorized the FAA administrator to fix compensation for FAA employees and not "be bound by any requirement to establish such compensation or benefits at particular levels." 49 U.S.C. § 106(*l*)(1). The legislative history of that section, however, demonstrates that Congress intended through this language to make clear that the compensation provisions of Title 5 were not to be incorporated into the PMS. An early Senate proposal regarding 49 U.S.C. § 106(*l*)(1) explicitly called for FAA employees to "be compensated in accordance with Title 5." S. Rep. No. 104–251, at 50 (1996); S. Rep. No. 104–333, at 52 (1996). A House Report, however, *eliminated* the applicability of Title 5's compensation provisions. *See* H.R. Rep. No. 104–848, at 21 (1996).[1] And, the language of the House Report mirrors the final language of § 106(*l*)(1). This alone demonstrates that Congress was aware of the

---

[1] "(1) Officers and employees. Except as provided in section 40122(a) of this title and section 347 of Public Law 104-50, the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels."

compensation provisions of Title 5 and explicitly chose not to make them part of the PMS.

This reading is consistent with the goals behind creation of the PMS. Congress explained that one primary reason for creating the PMS was to provide the FAA flexibility in hiring and compensation matters so as to make the agency function like a private sector employer. *See* H.R. Rep. No. 104–475, at 31 (1996) (stating that the FAA "should have the flexibility to hire and fire as in the private sector"); S. Rep. No. 104–251, at 17 (1996) ("exempting the FAA from personnel requirements and allowing the agency to offer wages that are competitive in the private market"). Requiring the FAA to comply with the overtime provisions of the FLSA is consistent with giving the FAA the flexibility to operate much like private sector companies, all of whom are bound by the FLSA's compensation provisions. Congress intended to give the FAA the ability to compete with the private sector. A more reasonable reading of the legislative history—along with the actual text of the PMS—is that Congress intended to allow the FAA to operate akin to a private enterprise, not subject to most of the provisions of Title 5 *and* subject to the overtime compensation requirements of the FLSA.

While I do not disagree that the FAA is permitted to mirror its own personnel policies on non-enumerated sections of Title 5, and, thus, is not barred from adopting, as its own, Title 5-like policies generally, that permission is not unbounded. The FAA may not choose to create a policy mimicking something in Title 5 if that policy would be otherwise prohibited by law, such as the FLSA.

For these reasons, I would affirm the judgment of the Claim's Court.